FILED

2019 Apr-11  PM 11:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| **Timothy Jarrod COLBURN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NUMBER:** |
| | ) | **6:15-cv-1789-TMP** |
| **Susan ODOM, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

**COME NOW** the Plaintiffs, Cecil Phillip Jean, Blackwell, by and through Plaintiffs' attorney of record, in the above-styled case and file this their *First Amended Complaint* and shows unto this Honorable Court as follows:

## I.  INTRODUCTION:

1.     This is a civil action for compensatory, statutory, and punitive damages and for declaratory relief.  Plaintiffs request this Honorable Court declare that the acts and/or omissions by the Defendants were unconstitutional under the *United States Constitution*; and, by an award of compensatory, statutory, and punitive damages, compensate Plaintiffs for the violations of Plaintiffs' constitutional rights sufficient

to deter the Defendants from further participation in such unconstitutional acts and/or omissions.

## II.   **JURISDICTION and VENUE:**

2.   This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivations, under color of State law, of rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the *United States Constitution*.  Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the *Federal Rules of Civil Procedure*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.   The individual Defendants reside in Walker County, Alabama, and the State Government, the Walker County Circuit Clerk Office, is located entirely within Walker County, Alabama, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Walker County, Alabama.  Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).  Plaintiffs assert that the Jasper Division is the proper Division of the United States District

Court for the Northern District of Alabama for the filing of this action.

### III.  __THE PARTIES:__

4.  The Plaintiff, Timothy Jarrod Colburn, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

5.  The Plaintiff, David Edward Rhodes, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

6.  The Plaintiff, Joseph Anthony Elliott, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

7.  The Plaintiff, Daniel Rudolph Cassels, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

8.  The Plaintiff, Todd Michael Harrison, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

9.  The Plaintiff, Howard Derrick Butler, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

10.  The Plaintiff, Landa L. Clark, is an adult female citizen of Walker County, Alabama, over the age of nineteen (19) years.

11.  The Plaintiffs, Gary Lynn Blackwell, is an adult male citizen of Walker County, Alabama, over the age of nineteen (19) years.

12.  The Defendant, Susan Odom, (hereinafter referred to as "Odom"), is

an adult female citizen of Walker County, Alabama, over the age of nineteen (19) years who was the Circuit Clerk of Walker County at all times relevant to this Complaint. Defendant Odom is sued in her individual and official capacities as Circuit Clerk and as supervisor for the Walker County Circuit Clerk Office personnel, including Ms. Yahn, Ms. Haggard, and Ms. Courington.

## IV. FACTUAL ALLEGATIONS COMMON TO AND INCORPORATED IN ALL COUNTS:

13. That the *Alabama Rules of Criminal Procedure 4.3* was amended to require that a probable cause hearing be held within 48 hours in a warrantless arrest situation, as here, where a defendant remains in custody, in accordance with the holding in *Cty. of Riverside v. McLauphlin*, 500 U.S. 44 (1991), and reads, in pertinent part, as follows:

> **Rule 4.3. Procedure upon arrest**
> (a) On arrest <u>without a warrant</u>: (1) A person arrested without a warrant: (iii) ...A judge or magistrate...shall determine whether probable cause exists to believe that the defendant committed the charged offense, by examining any necessary witness in accordance with the procedures for making a probable cause determination provided in Rule 2.4. If the judge or magistrate finds there is probable cause for the arrest of the person, a complaint shall promptly be prepared, filed and served on the defendant, and the judge or magistrate shall proceed as provided in Rule 4.4 for initial appearance. ... <u>If a probable cause determination is not made</u> by a judge **or magistrate**

without undue delay, and in no event later than forty-eight (48) hours after arrest, then, unless the offense for which the person was arrested is not a bailable offense, the person shall be released upon execution of an appearance bond in the amount of the minimum bond set in Rule 7.2, and shall be directed to appear either at a specified time and place or at such time and place as he or she shall be subsequently notified of...

*Alabama Rules of Criminal Procedure* Rule 4.3(a)(1)(iii)[1]. (Emphasis added.)

14.     That *Alabama Rules of Criminal Procedure 2.4* was drafted to be consistent with the mandates of the Fourth Amendment to the United States Constitution, and reads as follows:

> **Rule 2.4.  Duty of Judge or Magistrate Upon Making of a Complaint**
> The judge or magistrate before whom a complaint is made may subpoena for examination any necessary witness.  In the event a duly summoned witness fails to appear, the judge or magistrate is authorized to issue a writ of attachment for the defaulting witness, commanding that said witness be brought before the issuing judge or magistrate at once for the purpose of examination.  If the judge or magistrate is reasonably satisfied from the complaint and the evidence, if any, submitted that the offense complained of has been committed **and that there is probable cause** to believe that the defendant committed it, **the judge or magistrate shall proceed under Rule 3.1**.

> *Alabama Rules of Criminal Procedure* Rule 2.4. (Emphasis added.)

15.     That *Alabama Rules of Criminal Procedure 3.1(a)* was drafted to be

---

[1]Cited from *Alabama Rules of Criminal Procedure Rule 4.3* amended effective March 3, 1992; August 1, 1997. Consequently, this is the law existing at the time of the Constitutional violations in each instance as set forth in Plaintiffs' complaint.

consistent with the mandates of the Fourth Amendment to the United

States Constitution, and reads as follows:

> **Rule 3.1  Issuance of Arrest Warrant or Summons**
> **(a)   Issuance.**
> Upon return of an indictment, or <u>upon a finding of probable cause made pursuant to Rule 2.4</u>, **the** judge or **magistrate shall immediately cause to be issued an arrest warrant** or a summons **as provided in Rule 3.2.**
>
> *Alabama Rules of Criminal Procedure* Rule 3.1(a). (Emphasis added.)

16.    That *Alabama Rules of Criminal Procedure 3.2(a)* reads, in pertinent

part, as follows:

> **Rule 3.2  Contents of Arrest Warrant or Summons**
> **(a) Arrest Warrant.**
> <u>An arrest warrant issued upon a complaint shall be signed by the</u> issuing judge or <u>magistrate</u>....
>
> *Alabama Rules of Criminal Procedure* Rule 3.2(a). (Emphasis added.)

17.    That *Alabama Rules of Criminal Procedure 4.4(a)* purpose is to

insert the judicial process between the police and the defendant at the

earliest practicable time in order to minimize the effects of

carelessness and abuse and insures procedural compliance with

*Miranda v. Arizona, 384 U.S. 436 (1966), and Escobedo v. Illinois,*

*378 U.S. 478 (1964)* as well as provides for the prompt determination of the conditions for release and read, in pertinent part, as follows:

> **Rule 4.4  Initial Appearance**
> **(a) In General.**
> At defendant's initial appearance the judge or magistrate shall:
> (1) Ascertain the defendant's true name and address and, if necessary, amend the <u>formal charges</u>[2] to reflect defendant's true name, instructing the defendant to notify the court promptly of any changes of address;
> (2) Inform the defendant of the charges against him;
> (3) Inform the defendan of the right to be represented by counsel, ... and, inform the defendant of the right to remain silent; and
> (4) Determine conditions of release in accordance with Rule 7.3.
>
> **(b) Felonies Charged by Complaint.**
> <u>An arrest warrant issued upon a complaint shall be signed by the</u> issuing judge or <u>magistrate</u>....
>
> *Alabama Rules of Criminal Procedure* Rule 4.4. (Emphasis added.)

18.  Lela Yahn, (hereinafter referred to as "Yahn"), is an adult female citizen of Walker County, Alabama, over the age of nineteen (19) years who was acting as a District Court Clerk and Magistrate of the Walker County Circuit Clerk Office at all times relevant to this Complaint.

---

[2] Formal charges in this instance means that the defendant <u>has been indicted</u> by the grand jury.  *See* Ala. R. Crim. P. 4.4 Committee Comments.  The Committee Comments regarding Rule 4.4(b) make reference to the imposition of the "additional burden at the initial appearance of informing a defendant charged with a felony but not yet indicted…"

19.   Carol Haggard, (hereinafter referred to as "Haggard"), is an adult female citizen of Walker County, Alabama, over the age of nineteen (19) years who was acting as a District Court Clerk and Magistrate of the Walker County Circuit Clerk Office at all times relevant to this Complaint.

20.   Debra Courington, (hereinafter referred to as "Courington"), is an adult female citizen of Walker County, Alabama, over the age of nineteen (19) years who was acting as a District Court Clerk and Magistrate of the Walker County Circuit Clerk Office at all times relevant to this Complaint.

21.   Mr. Colburn was arrested in Walker County, Alabama, on October 10, 2013, and immediately carried to the Walker County Jail where he was detained.

22.   That the arrest of Mr. Colburn on October 10, 2013, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was John Blair Huddleston (hereinafter referred to as "Huddleston").

23.   Mr. Rhodes was arrested in Walker County, Alabama, on October 10, 2013, and immediately carried to the Walker County Jail where he was detained.

24. That the arrest of Mr. Rhodes on October 10, 2013, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was Huddleston.

25. Mr. Elliott was arrested in Walker County, Alabama, on October 10, 2013, and immediately carried to the Walker County Jail where he was detained.

26. That the arrest of Mr. Elliott on October 10, 2013, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was Huddleston.

27. Mr. Cassels was arrested in Walker County, Alabama, on October 10, 2013, and immediately carried to the Walker County Jail where he was detained.

28. That the arrest of Mr. Cassels on October 10, 2013, was a "warrantless arrest" without probable cause and the arresting officer was Huddleston.

29. Mr. Harrison was arrested in Walker County, Alabama, on October 11, 2013, and immediately carried to the Walker County Jail where he was detained.

30. That the arrest of Mr. Harrison on October 11, 2013, was a "warrantless arrest," as no probable cause determination was made

prior to the arrest, and the arresting officer was Huddleston.

31. Mr. Butler was arrested in Walker County, Alabama, on April 26, 2014, and immediately carried to the Walker County Jail where he was detained.

32. That the arrest of Mr. Butler on April 26, 2014, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was Huddleston.

33. Ms. Clark was arrested in Walker County, Alabama, on June 12, 2014, and immediately carried to the Walker County Jail where he was detained.

34. That the arrest of Ms. Clark on June 12, 2014, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was Huddleston.

35. Mr. Blackwell was arrested in Walker County, Alabama, on June 12, 2014, and immediately carried to the Walker County Jail where he was detained.

36. That the arrest of Ms. Blackwell on June 12, 2014, was a "warrantless arrest," as no probable cause determination was made prior to the arrest, and the arresting officer was Huddleston.

37. That Huddleston immediately carried each of the aforementioned

Plaintiffs[3] to the Walker County Jail (hereinafter referred to as "Jail") at the Walker County Sheriff Department in Walker County, Jasper, Alabama, without approaching a judge or magistrate for a probable cause determination.

38.   Consequently, a probable cause determination was not made for each of their respective arrest prior to each being carried to Jail and being detained.

39.   That a probable cause determination was not made by either a judge or magistrate within forty-eight (48) hours of either of the Plaintiffs' "warrantless arrest" and carried to Jail and detained.

40.   That the Clerks of the Circuit Court of each County, including Defendant Odom, have the administrative responsibility for and supervision of the records and clerical services of the circuit courts and the district courts[4] in accordance with applicable general laws and rules.

41.   That Defendant Odom is the immediate supervisor of Yahn, Haggard,

---

[3]  The arrest of Mr. Rhodes, Mr. Elliott, and Mr. Cassels are related to each other but not to any of the other Plaintiffs.  The arrest of Ms. Clark and Mr. Blackwell are related to each other but not to any of the other Plaintiffs.

[4]  Except as otherwise provided in this article, the clerk of the circuit court shall be ex officio clerk of the district court within the circuit and shall have administrative responsibility for and supervision of the records and clerical services of the district court in accordance with applicable general laws and rules.  *Code of Alabama §12-17-160 (1975).*  Consequently, the term "District Court Clerk" as used hereinafter simply refers to the "person" or "persons" who has or have the administrative responsibility for and supervision of the records of the district court.

and Courington and is responsible[5] for their respective training and supervision of their performance.

42.   That Defendant Odom was responsible for insuring that the magistrates she assigned were properly trained and that each conducted themselves in accordance with the *United States Constitution,* the *Alabama Constitution of 1901* and the *Alabama Rules of Criminal Procedure*, including, but not limited to, Rules 2.4, 3.1, 4.3, 4.4, and 7.2 *Alabama Rules of Criminal Procedure*.

43.   That the duties of a magistrate include, but are not limited to, determining whether probable causes existed in accordance with Rules 2.4[6] and 4.3[7] and if there was a determination that probable cause existed to believe the defendant committed the charged offense then the magistrates are required, in accordance with Rule 3.1(a)[8] to cause an arrest warrant to be issued.

44.   That the duties of a magistrate further include, but are not limited to, determining whether probable causes existed in accordance with Rules 2.4 and 4.3 and if there was not a determination that probable cause existed to believe the defendant committed the charged offense

---

[5] See *Code of Alabama (1975) §§12-17-93, 94, and 160-162.*
[6] *Alabama Rules of Criminal Procedure Rule 2.4.*
[7] *Alabama Rules of Criminal Procedure Rule 4.3.*
[8] *Alabama Rules of Criminal Procedure Rule 3.1(a).*

inquiry or no determination made within forty-eight (48) hours setting appearance bonds in the amount of the minimum bond set in Rule 7.2[9] and conducting an Initial Appearance Hearing in accordance with Rule 4.4[10] after a determination is made that probable cause exists to believe that the defended committed the charged offense.

45.   That Defendant Odom from time to time assigned Yahn, Haggard, and Courington the duties of magistrate as part of their responsibilities with the Walker County Circuit Clerks Office (hereinafter referred to as "WCCCO").

46.   That Defendant Odom selected Yahn, Haggard, and Courington and assigned them to perform the duties of magistrate and during the performance of that duty one of them travelled to the Jail almost daily.

47.   That Yahn, Haggard, and Courtington, while acting as magistrates travelled to the Jail numerous times during the terms of the Plaintiffs' incarceration.

48.    That the Jail personnel were not presented with a warrant justifying either of the Plaintiffs' arrest at the time that each was brought into

---

[9] *Alabama Rules of Criminal Procedure Rule 7.2.*
[10] *Alabama Rules of Criminal Procedure Rule 4.4.*

the Jail immediately following their "warrantless arrest," and neither were the magistrates during their visits to the jail, because said warrants had not been obtained Huddleston.

49. That Defendant Odom and Ms. Yahn, Ms. Haggard, and or Ms. Courington knew or should have known that each of the arrests of Mr. Colburn, Mr. Rhodes, Mr. Elliott, and Mr. Cassels was a "warrantless arrest" at the time that each was brought into the jail on October 10, 2013, because part of the duties of Ms. Yahn, Ms. Haggard, and or Ms. Courington, included traveling to the Jail almost daily and making a determination of who were the new arrestees, what were their charges, and whether probable cause existed to believe that the defendant committed the charge in accordance with Rule 2.4 (if it is not known that said determination has already been made) and thereafter conduct an Initial Appearance Hearing in accordance with Rule 4.4.

50. That Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington knew or should have known that the arrest of Mr. Harrison was a "warrantless arrest" at the time that Mr. Harrison was brought into the jail on October 11, 2013, because part of the duties of Ms. Yahn, Ms. Haggard, and or Ms. Courington, included traveling to

the Jail almost daily and making a determination of who were the new arrestees, what were their charges, and whether probable cause existed to believe that the defendant committed the charge in accordance with Rule 2.4 (if it is not known that said determination has already been made) and thereafter conduct an Initial Appearance Hearing in accordance with Rule 4.4.

51. That Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington knew or should have known that the arrest of Mr. Butler was a "warrantless arrest" at the time that Mr. Butler was brought into the jail on April 26, 2014, because part of the duties of Ms. Yahn, Ms. Haggard, and or Ms. Courington, included traveling to the Jail almost daily and making a determination of who were the new arrestees, what were their charges, and whether probable cause existed to believe that the defendant committed the charge in accordance with Rule 2.4 (if it is not known that said determination has already been made) and thereafter conduct an Initial Appearance Hearing in accordance with Rule 4.4.

52. That Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington knew or should have known that each of the arrests of Ms. Clark and Mr. Blackwell was a "warrantless arrest" at the time that

each was brought into the jail on June 12, 2014, because part of the duties of Ms. Yahn, Ms. Haggard, and or Ms. Courington, included traveling to the Jail almost daily and making a determination of who were the new arrestees, what were their charges, and whether probable cause existed to believe that the defendant committed the charge in accordance with Rule 2.4 (if it is not known that said determination has already been made) and thereafter conduct an Initial Appearance Hearing in accordance with Rule 4.4.

53.   That Ms. Yahn, Ms. Haggard, and or Ms. Courington would have been privy to who the arresting officer was related to the arrest of each of the Plaintiffs.

54.   That the arresting officer of each of the Plaintiffs was Huddleston.

55.   Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington knew that Huddleston often avoided appearing before them for a probable cause determination for days, weeks, and even months, far in excess of forty-eight (48) hours set forth in the holding of *Cty. of Riverside v. McLauphlin.*

56.   That in the event that Ms. Yahn, Ms. Haggard, and or Ms. Courington did not know that the arrest of each of the Plaintiffs was a "warrantless arrest" at the time of each of the Plaintiffs' initial

booking, Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington had a duty to make that determination within forty-eight (48) hours thereafter.

57.    That in the event that Ms. Yahn, Ms. Haggard, and or Ms. Courington did not know that the arrest of each of the Plaintiffs was a "warrantless arrest" at the time of each of the Plaintiffs' initial booking, Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington had a duty to make that determination in accordance with Rules 2.4 and 4.3 before proceeding forward with an Initial Appearance Hearing.

58.    That Defendant Odom was each day provided a current 'roster' that was generated daily by the Jail which contained the names of all inmates in custody on that day which provided Defendant Odom, Ms. Yahn, Ms. Haggard, and or Ms. Courington with direct knowledge of who remained in custody each day following their initial booking, including the names of each of the Plaintiffs during their incarceration in the Jail.

59.    That Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington had an obligation imposed upon them by state law in accordance with the *United States Constitution*, to release each of the

Plaintiffs upon the execution of an appearance bond in the amount of the minimum bond set in Rule 7.2, and each of the Defendants' failure to carry out that obligation caused the violations of Plaintiffs' individual Constitutional rights including those afforded under the Fourth Amendment.

60.  That on October 11, 2013, Ms. Haggard met with Mr. Colburn, following his "warrantless arrest" and booking into the Jail on October 10, 2013.

61.  That said meeting with Mr. Colburn was characterized as an *Initial Appearance* hearing and Ms. Haggard obtained Mr. Colburn's signature on Form C-81[11].

62.  Mr. Colburn's C-81 stated that he was "charged with committing the offense(s) of Trafficking, Upcs [Unlawful Possession of a Controlled Substance], Umcs [Unlawful Manufacturing of a Controlled Substance], Updp [Unlawful Possession of Drug Paraphernalia] in this court in violation of 13a-12-231, 13a-12-212, 13a-12-260(c)."

63.  Ms. Haggard advised Mr. Colburn that his bond was set at a secured appearance bond in the amount of $3,016,000.00—no probable cause determination had yet been made and he remained in jail on a

---

[11] This form is a form of the State of Alabama Unified Judicial System and titled, *Advice of Rights on Initial Appearance Before Judge or Magistrate (Felony)*.

"warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

64. That on October 11, 2013, Ms. Haggard met with Mr. Rhodes, following his "warrantless arrest" and booking into the Jail on October 10, 2013.

65. That said meeting with Mr. Rhodes was characterized as an *Initial Appearance* hearing and Ms. Haggard obtained Mr. Rhodes' signature on Form C-81.

66. Mr. Rhodes' C-81 stated that he was "charged with committing the offense(s) of Umcs [Unlawful Manufacturing of a Controlled Substance], Upcs [Unlawful Possession of a Controlled Substance], Updp [Unlawful Possession of Drug Paraphernalia], Poss Marij. 1st [Unlawful Possession of Marijuana 1st Degree] in this court in violation of 13a-12-218, 13a-12-212, 13a-12-260(c), 13a-12-213."

67. Ms. Haggard advised Mr. Rhodes that his bond was set at a secured appearance bond in the amount of $1,517,000.00—no probable cause determination had yet been made and he remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

68. That on October 11, 2013, Ms. Haggard met with Mr. Elliott, following

his "warrantless arrest" and booking into the Jail on October 10, 2013.

69.  That said meeting with Mr. Elliott was characterized as an *Initial Appearance* hearing and Ms. Haggard obtained Mr. Elliott's signature on Form C-81.

70.  Mr. Elliott's C-81 stated that he was "charged with committing the offense(s) of Unlawful Manf 1st [Unlawful Manufacturing of a Controlled Substance 1st Degree], Upcs [Unlawful Possession of a Controlled Substance], Updp [Unlawful Possession of Drug Paraphernalia], Poss Marij. 1st [Unlawful Possession of Marijuana 1st Degree] in this court in violation of 13a-12-218, 13a-12-212, 13a-12-260(c)."

71.  Ms. Haggard advised Mr. Elliott that his bond was set at a secured appearance bond in the amount of $1,516,000.00—no probable cause determination had yet been made and he remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

72.  That on October 11, 2013, Ms. Haggard met with Mr. Cassels, following his "warrantless arrest" and booking into the Jail on October 10, 2013.

73.  That said meeting with Mr. Cassells was characterized as an *Initial Appearance* hearing and Ms. Haggard obtained Mr. Cassels signature on Form C-81.

74.  Mr. Cassels' C-81 stated that he was "charged with committing the offense(s) of Unlaw Manf [Unlawful Manufacturing of a Controlled Substance], Upcs [Unlawful Possession of a Controlled Substance], Updp [Unlawful Possession of Drug Paraphernalia], Poss Marij. 1st [Unlawful Possession of Marijuana 1st Degree] in this court in violation of 13a-12-218, 13a-12-212, 13a-12-260(c)."

75.  Ms. Haggard advised Mr. Cassels that his bond was set at a secured appearance bond in the amount of $1,516,000.00—no probable cause determination had yet been made and he remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

76.  That on October 28, 2013, Ms. Yahn met with Mr. Harrison, following his "warrantless arrest" and booking into the Jail on October 11, 2013.

77.  That said meeting with Mr. Harrison was characterized as an *Initial Appearance* hearing and Ms. Yahn obtained Mr. Harrison's signature on Form C-81.

78.  Mr. Harrison's C-81 stated that he was "charged with committing the

offense(s) of VDR1 [not a known abbreviation but a clerk's code for Unlawful Possession of Drug Paraphernalia], TRAK [not a known abbreviation but a clerk's code for Trafficking-Methamphetamine] MCS1 [Unlawful Manufacturing of Controlled Substance 1st Degree] UPCS [Unlawful Possession of a Controlled Substance], VAPM [not a known abbreviation] in this court in violation of _____."

79.  Ms. Yahn advised Mr. Harrison that his bond was set at a secured appearance bond in the amount of $2,017,000.00 PROP—no probable cause determination had yet been made and he remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

80.  That on April 28, 2014, Ms. Yahn met with Mr. Butler, following his "warrantless arrest" and booking into the Jail on April 26, 2014.

81.  That said meeting with Mr. Butler was characterized as an *Initial Appearance* hearing and Ms. Haggard obtained Mr. Butler's signature on Form C-81.

82.  Mr. Butler's C-81 stated that he was "charged with committing the offense(s) of MCS1 [Unlawful Manufacturing of Controlled Substance 1st Degree] UPCS [Unlawful Possession of a Controlled Substance] VDR1 [not a known abbreviation but a clerk's code for Unlawful

Possession of Drug Paraphernalia] in this court in violation of

_____."

83.  Ms. Yahn advised Mr. Butler that his bond was set at a secured
     appearance bond in the amount of $1,016,000.00 PROP—no
     probable cause determination had yet been made and he remained in
     jail on a "warrantless arrest" because he could not make bail as
     opposed to being released on an appearance bond.

84.  That on June 13, 2014, Ms. Yahn met with Ms. Clark, following her
     "warrantless arrest" and booking into the Jail on June 12, 2014.

85.  That said meeting with Ms. Clark was characterized as an *Initial
     Appearance* hearing and Ms. Yahn obtained Ms Clark's signature on
     Form C-81.

86.  Ms. Clark's C-81 stated that she was "charged with committing the
     offense(s) of MCS1 [Unlawful Manufacturing of Controlled Substance
     1st Degree] UPCS [Unlawful Possession of a Controlled Substance]
     VDR1 [not a known abbreviation but a clerk's code for Unlawful
     Possession of Drug Paraphernalia] TRAK [not a known abbreviation
     but a clerk's code for Trafficking-Methamphetamine] in this court in
     violation of _____."

87.  Ms. Yahn advised Ms. Clark that her bond was set at a secured

appearance bond in the amount of $2,016,000.00 PROP—no probable cause determination had yet been made and she remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

88. That on June 13, 2014, Ms. Yahn met with Mr. Blackwell, following his "warrantless arrest" and booking into the Jail on June 12, 2014.

89. That said meeting with Mr. Blackwell was characterized as an *Initial Appearance* hearing and Ms. Yahn obtained Mr. Blackwell's signature on Form C-81.

90. Mr. Blackwell's C-81 stated that he was "charged with committing the offense(s) of MCS1 [Unlawful Manufacturing of Controlled Substance 1st Degree] UPCS [Unlawful Possession of a Controlled Substance] VDR1 [not a known abbreviation but a clerk's code for Unlawful Possession of Drug Paraphernalia] in this court in violation of _____."

91. Ms. Yahn advised Mr. Blackwell that his bond was set at a secured appearance bond in the amount of $1,016,000.00 PROP—no probable cause determination had yet been made and he remained in jail on a "warrantless arrest" because he could not make bail as opposed to being released on an appearance bond.

92.    That upon information and belief, the Plaintiffs were not provided with a copy of either Form C-80[12] or Form C-81 at the time of their respective meetings with Haggard or Yahn.

93.    That the only person present at any of the aforementioned meetings that were characterized as *Initial Appearance* hearings who had any knowledge of any of the facts and circumstances surrounding was each of the respective Plaintiffs.

94.    That Form C-81 which each of the Plaintiffs were directed to sign contemplated persons being subject to a "warrantless arrest" and further that the "magistrate will determine whether there was probable cause for the charges against [each of the Plaintiffs]"

95.    That Rule 2.4 empowers the judge or magistrate before whom a complaint with subpoena power to gather evidence and after review if the magistrate is <u>reasonably satisfied from the complaint and the evidence</u> that the offence complained of has been committed <u>and there is probable cause to believe that the defendant committed it</u> **the magistrate shall proceed under Rule 3.1**.

96.    That Rule 3.1 requires that upon the finding of probable cause made pursuant to Rule 2.4, the **magistrate shall immediately cause to**

---

[12] This form is a form of the State of Alabama Unified Judicial System and titled, *Order on Initial Appearance*.

**be issued an arrest warrant as provided in Rule 3.2.**

97.   That an arrest warrant issued upon complaint (as opposed to grand jury indictment) **shall be signed by the issuing magistrate**.

98.   That Rule 4.4 only then contemplates an Initial Appearance hearing **after a probable cause determination** because Rule 4.4 it speaks to the "formal charges."

99.   That Ms. Haggard did not conduct a probable cause determination related to the alleged charges brought against Mr. Colburn, Mr. Rhodes, Mr. Elliott, or Mr. Cassels at the time of her initial meeting with either of them because no arrest warrant was issued as required by Rule 3.1, but instead the probable cause determination was made by Ms. Yahn contemporaneously with the issuance of the arrest warrants, as follows:

Probable cause determination Mr. Colburn—November 15, 2013

Probable cause determination Mr. Rhodes—November 15, 2013

Probable cause determination Mr. Elliott—November 15, 2013

Probable cause determination Mr. Cassels—November 15, 2013

100.   That Ms. Yahn did not conduct a probable cause determination related to the alleged charges brought against Mr. Harrison at the

time of her initial meeting with either of them because no arrest warrant was issued as required by Rule 3.1, but instead the probable cause determination was made by Ms. Yahn contemporaneously with the issuance of the arrest warrant, as follows:

  Probable cause determination Mr. Harrison—January 3, 2014

101. That Ms. Yahn did not conduct a probable cause determination related to the alleged charges brought against Mr. Butler, Ms. Clark, or Mr. Blackwell at the time of her initial meeting with either of them because no arrest warrant was issued as required by Rule 3.1, but instead the probable cause determination was made by Ms. Courington contemporaneously with the issuance of the arrest warrants, as follows:

  Probable cause determination Mr. Butler—May 30, 2014

  Probable cause determination Ms. Clark—June 27, 2014

  Probable cause determination Mr. Blackwell—June 27, 2014

102. That at the time of the actual probable cause determination, Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington, knew or should have known that each of the Plaintiffs had been

incarcerated for far greater than 48 hours and were due to be released on an appearance bond.

103. That Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington knowingly, purposely, wantonly, and/or wrongfully or unlawfully caused each of the Plaintiffs to be detained and confined in custody on a "warrantless arrest" without seeking a probable cause determination and without a constitutional adjudication of guilt for following approximate number of days:[13]

|  | Number of Days Before Probable Cause Determination | Number of Days Before Person Released from Jail |
|---|---|---|
| Mr. Colburn | 36 | 35 |
| Mr. Rhodes | 36 | 42 |
| Mr. Elliott | 36 | 42 |
| Mr. Cassels | 36 | 42 |
| Mr. Harrison | 84 | 44 |
| Mr. Butler | 34 | 31 |
| Ms. Clark | 15 | 21 |
| Mr. Blackwell | 15 | 56 |

104. That the Plaintiffs were arrested and released on or about the following dates from jail:

Mr. Colburn       October 10, 2013—November 14, 2013
*Petition for Writ of Habeas Corpus Filed* and Granted

Mr. Rhodes        October 10, 2013—November 21, 2013

---

[13] Habeas corpus petitions were filed on behalf of Mr. Colburn, Mr. Rhodes, Mr. Elliott, Mr. Cassels, and Mr. Butler for their respective release. Mr. Colburn, Mr. Rhodes, Mr. Elliott, Mr. Cassels, and Mr. Butler incurred substantial attorney fees related to the habeas corpus petitions.

*Petition for Writ of Habeas Corpus Filed* and Granted

Mr. Elliott        October 10, 2013—November 21, 2013
*Petition for Writ of Habeas Corpus Filed* and Granted

Mr. Cassels      October 10, 2013—November 21, 2013
*Petition for Writ of Habeas Corpus Filed* and Granted

Mr. Harrison     October 11, 2013—November 24, 2013
Basis for release unknown, believed because of other Habeas Petitions and granted

Mr. Butler         April 26, 2014—May 27, 2014
*Petition for Writ of Habeas Corpus Filed* and Granted

Ms. Clark         June 12, 2014—July 3, 2014
*Motion for Bond Reduction* filed in criminal court and Granted

Mr. Blackwell    June 12-2014—August 7, 2014
*Motion for Bond Reduction* filed in criminal court and Granted

105.    That while committing all of the acts above, Defendant Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington were acting pursuant to "customs or practice" of WCCCO and "customs or practice" of other WCCCO personnel.

106.    Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington should have released the Plaintiffs within forty-eight (48) hours after each of their "warrantless arrest" "upon execution of an appearance bond in the amount of the minimum bond set in Rule 7.2" of the

*Alabama Rules of Criminal Procedure*.

107. That the Plaintiffs and their friends and family members inquired of the WCCCO periodically (almost daily) about whether or not 'they had a court case or court date' for the first two to three weeks after each of their respective arrests only to learn that there was yet to be a case created in District Court of Walker County, Alabama.

108. That said inquiries further put Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington on notice that Plaintiffs were being detained in the Jail for more than forty-eight (48) hours without a probable cause determination and without a constitutional adjudication of guilt.

109. That Defendant Odom has set policy in the WCCCO that a district court case will not be created until such time as an arrest warrant (probable cause determination) is obtained and thereafter executed and returned to appropriate District Court Clerk for entry into the State of Alabama's State Judicial Information System.

110. That Defendant Odom has set policy in the WCCCO that the WCCCO will not assign a 'case number' and will not accept district court filings, including bond related motions, until such time as a court case is created as set forth in the paragraph above.

111. That Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington knew that a probable cause determination must be made within forty-eight (48) hours of making a "warrantless arrest" of a person or "the person shall be released upon execution of an appearance bond in an amount of the minimum bond set in Rule 7.2" of the *Alabama Rules of Criminal Procedure*.

112. That Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington knew that the Plaintiffs could not file papers seeking release from their confinement until the processes set-out in the preceding paragraphs were complete.

113. That Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington actions in failing to obtain a warrant within forty-eight (48) hours of each of the Plaintiffs' arrest which prevented the creation of a court case equated to no bail on a bailable offense or to "locking them up and throwing away the key."

114. That Defendant Odom had actual notice of Ms. Yahn, Ms. Haggard, and Ms. Courington's pattern of conduct in unjustly failing to make "a probable cause determination" "without undue delay and in no event later than 48 hours after arrest" "of person[s] without a warrant", including but not limited to:

a. The daily Jail roster that listed the persons detained in the Jail;

b. Ms. Yahn traveled to the Jail no less than 13 times while Mr. Colbern was detained on a "warrantless arrest;"

c. Ms. Yahn traveled to the Jail no less than 15 times while Mr. Rhodes, Mr. Elliott, and Mr. Cassels were detained on a "warrantless arrest;"

d. Ms. Yahn traveled to the Jail no less than 14 times while Mr. Harrison was detained on a "warrantless arrest;"

e. Ms. Yahn traveled to the Jail no less than 8 times while Mr. Butler was detained on a "warrantless arrest;"

f. An unnamed person from the WCCCO traveled to the Jail on one occasion, May 9, 2014, while Mr. Butler was detained on a "warrantless arrest;"

g. Ms. Yahn traveled to the Jail no less than 3 times while Ms. Clark was detained on a "warrantless arrest;"

h. Ms. Yahn traveled to the Jail no less than 13 times while Mr. Blackwell was detained on a "warrantless arrest;"

i. An unnamed person from the WCCCO traveled to the Jail on one occasion, July 11, 2014, while Mr. Blackwell was detained on a "warrantless arrest;"

j. The WCCCO on multiple occasions calling Huddleston and other members of the Walker County Sheriff Department and asking said Deputy Sheriffs to participate in a probable cause determination related to a "warrantless arrest" made by Huddleston and other Deputy Sheriffs;

k. Numerous complaints being made to Defendant Odom and other WCCCO personnel by family members of persons where a "warrantless arrest" was made by various Deputy Sheriffs and the families were unable to get that person out of jail because there was 'no paperwork;'

l. Walker County Courthouse Circuity and District Judges and their staff members reporting same to Defendant Odom; and

m. Defendant Odom verbally addressing Huddleston and other Deputy Sheriffs on numerous occasions related to the same type conduct complained of herein.

115. That Defendant Odom had actual notice of Ms. Yahn, Ms. Haggard, and Ms. Courington's pattern of conduct in unjustly failing to make "a probable cause determination" "without undue delay and in no event later than 48 hours after arrest" "of person[s] without a warrant", including but not limited to the following other instances:

| Case Number | Date of Arrest | Number of days without Probable Cause Determination |
|---|---|---|
| DC-2013-512 | 04/12/13 | 7 |
| DC-2013-513 | 04/12/13 | 7 |
| DC-2013-514 | 04/12/13 | 7 |
| DC-2013-517 | 04/12/13 | 7 |
| DC-2013-546 | 04/19/13 | 4 |
| DC-2013-547 | 04/20/13 | 3 |
| DC-2013-710 | 05/21/13 | 3 |
| DC-2013-711 | 05/21/13 | 3 |
| DC-2013-712 | 05/21/13 | 3 |
| DC-2013-902 | 06/23/13 | 5 |
| DC-2013-1142 | 06/22/13 | 48 |
| DC-2013-1144 | 06/19/13 | 51 |
| DC-2013-1295 | 08/30/13 | 11 |

116.  That Defendant Odom had actual notice of Defendant Yahn, Haggard, and Courtington's pattern of conduct as set forth with more specificity hereinabove.

117.  That Defendant Odom, with knowledge of the foregoing, ignored a known or obvious risk that Ms. Yahn, Ms. Haggard, and Ms. Courington were highly likely to engage or continue to engage in the conduct of the nature described hereinabove and thereby continue to subject citizens to being detained and confined on a "warrantless arrest" for more than forty-eight (48) hours after arrest without seeking a probable cause determination and without a constitutional adjudication of guilt.

118.   That Defendant Odom acted with deliberate indifference in his failure to restrict Ms. Yahn, Ms. Haggard, and Ms. Courington from allowing citizens to be detained and confined on "warrantless arrests" for more than forty-eight (48) hours after arrest without seeking a probable cause determination and without a constitutional adjudication of guilt.

119.   That Defendant Odom acted with deliberate indifference in her making of or failure to compose, implement, and enforce policies and procedures and to further train personnel to ensure compliance with same regarding the proper procedure for conducting probable cause determinations, releasing citizens who are being detained and confined on a "warrantless arrest" for more than forty-eight (48) hours after arrest when a probable cause determination has not been made thereby unconstitutionally compromising said citizens' rights and liberties which are protected by laws, regulations, rules, and/or standards of operating procedures, as well as the laws and regulations of the State of Alabama, the *Alabama Constitution*, the *United States Constitution*, and 42 U.S.C. § 1983.

120.   That Defendant Odom acted with deliberate indifference in her failure to compose, implement, and enforce policies and procedures,

and further train personnel to ensure compliance with same, and in doing so did allow each of the Plaintiffs and others as set forth hereinabove to be detained and confined on a "warrantless arrest" without seeking a warrant and without a constitutional adjudication of guilt resulting in the overt and egregious violations of Plaintiffs' constitutional rights.

121. That the foregoing facts support the inference that Defendant Odom directed Ms. Yahn, Ms. Haggard, and Ms. Courington to act unlawfully or knew that Ms. Yahn, Ms. Haggard, and Ms. Courington would act unlawfully and failed to stop them from doing so.

122. That while committing all of the acts above, Defendant Odom, Yahn, Haggard, and Courington were acting "under color of State law."

123. That Ms. Yahn, Ms. Haggard, and Ms. Courington's obvious, flagrant, and rampant behavior, has continued across a lengthy period of time and in doing so is sufficient to put Defendant Odom on notice of the widespread abuse and deprivations which resulted in the violation of citizens' constitutional rights, including but not limited to, those events listed hereinabove.

124. That Defendant Odom has had direct notice of Ms. Yahn, Ms. Haggard, and Ms. Courington's history of widespread abuse of policy,

procedure, and failure to follow protocol which resulted in the violation of citizens' constitutional rights, including but not limited to, those events listed hereinabove, thereby giving Defendant Odom notice of the need to correct the deprivation.

125. That Defendant Odom had direct notice of Ms. Yahn, Ms. Haggard, and Ms. Courington's history of widespread abuse of policy, procedure, and failure to follow protocol which resulted in the violation of citizens' constitutional rights, including but not limited to, those events listed hereinabove, thereby giving Defendant Odom notice of the need to provide increased and/or adequate funding for policy implementation and training to address and correct the deprivation.

126. That as a result of Defendants' concerted unlawful and malicious detention and confinement of Plaintiffs, Ms. Yahn, Ms. Haggard, and Ms. Courington deprived Plaintiffs, as described with more particularity hereinabove, of their personal liberty and civil rights without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Eighth, Fourteenth Amendments of the *United States Constitution*, and 42 U.S.C. § 1983.

127.   That Defendants Odoms, Yahn, Haggard, and Courington's conduct, as described with more particularity hereinabove, is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith and conduct exceeding gross negligence.

128.   That in the aforesaid transactions the Defendants occupied towards Plaintiffs a superior position in that by law Defendants had a duty to protect the Constitutional rights of the Plaintiffs.

## FEDERAL LAW CLAIMS:

### COUNT ONE

(Unlawful Detention and Confinement—Defendant Odom)
CIVIL RIGHTS—42 U.S.C. § 1983

129.   Plaintiffs realleges and incorporates by this reference each and every allegation of each paragraph hereinabove as though set forth in full herein.

130.   Defendant Odom and other members of the WCCCO, including but not limited to Ms. Yahn, Ms. Haggard, and Ms. Courington, in combination while acting under the color of State law conspired together in a concerted action and in doing so intentionally violated Plaintiffs' constitutional right not to be detained and confined on a

"warrantless arrest" for more than forty-eight (48) hours after arrest without seeking a warrant and without a constitutional adjudication of guilt thereby depriving Plaintiffs of both their right to their liberty without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the *United States Constitution* and 42 U.S.C. § 1983.

131. Defendant Odom and other members of the WCCCO, including but not limited to Ms. Yahn, Ms. Haggard, and Ms. Courington, in combination while each was acting under the color of State law conspired together in a concerted action and in doing so did act with malice or reckless indifference to Plaintiffs' federally protected rights and in doing so violated Plaintiffs' constitutional right not to be detained and confined on a "warrantless arrest" for more than forty-eight (48) hours after arrest without seeking a warrant and without a constitutional adjudication of guilt thereby depriving Plaintiffs of both their right to their liberty without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the *United States Constitution* and 42 U.S.C. § 1983.

132. All the acts or omissions of Defendant Odom other members of the WCCCO, including but not limited to Ms. Yahn, Ms. Haggard, and Ms. Courington, as described hereinabove, were done while Defendant Odom and other members of the WCCCO, including but not limited to Ms. Yahn, Ms. Haggard, and Ms. Courington, were purporting or pretending to act in the performance of official duty; that is, the unlawful acts were an abuse or misuse of power which Defendant Odom and other members of the WCCCO possessed only because of their position and because of the position those persons held members of the WCCCO.

133. The Plaintiffs continues to suffer mental anguish, psychological and emotional distress.

134. As a direct and proximate result of Defendant Odom's actions, Plaintiffs was injured, damaged, and deprived of rights, privileges and immunities under the Fourth, Fifth, Eighth and Fourteenth Amendments to the *United States Constitution* and the laws of the State of Alabama.

135. The Plaintiffs claims damages against Defendant Odom for said constitutional violations as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

## COUNT TWO

(Failure to Adequately Discipline, Train and Supervise—Defendant Odom)
CIVIL RIGHTS—42 U.S.C. § 1983

136.  Plaintiffs realleges and incorporates by this reference each and every allegation of each paragraph hereinabove as though set forth in full herein.

137.  The Defendant Odom as a matter of custom and practice, has with deliberate indifference, failed to adequately discipline, sanction, train, and supervise the day-to-day activities of the WCCCO, or otherwise direct members of the WCCCO concerning the rights of citizens, thereby causing Ms. Yahn, Ms. Haggard, and Ms. Courington in this case to engage in unlawful conduct described hereinabove.  This failure to train includes, but is not limited to, a failure to train personnel in the proper procedure of magistrates as the general use of their powers including detaining and confining citizens on a "warrantless arrest" for more than forty-eight (48) hours after arrest without seeking a warrant and without a constitutional adjudication of guilt but affording said citizens with the rights and liberties as required by laws, regulations, rules, and/or standards of operating procedures, as well as the laws and regulations of the State of Alabama,

the *Alabama Constitution*, the *United States Constitution*, and 42 U.S.C. § 1983.

138. Defendant Odom, as a matter of custom and practice, has with deliberate indifference, failed to properly sanction or discipline WCCCO personnel, including Ms. Yahn, Ms. Haggard, and Ms. Courington in this case, for violations of constitutional rights of citizens, thereby causing other members of the WCCCO, including Ms. Yahn, Ms. Haggard, and Ms. Courington in this case, to engage in said unlawful conduct.

139. Ms. Yahn, Ms. Haggard, and Ms. Courington's obvious, flagrant, and rampant behavior, has continued across a lengthy period of time and in doing so is sufficient to put Defendant Odom on notice of history of widespread abuse of policy, procedure, and failure to follow protocol which resulted in the violation of citizens' constitutional rights, including but not limited to, those events listed hereinabove, thereby giving Defendant Odom notice of the need to correct the deprivation.

140. That the conduct of Ms. Yahn, Ms. Haggard, and Ms. Courington described herein was not an isolated incident, but instead, is just one incident evidencing a widespread custom and practice of said Defendants allowing Ms. Yahn, Ms. Haggard, and Ms. Courington to

engage in said unlawful conduct.

141.   That Defendant Odom had actual and/or constructive notice of similar past acts or omissions of Ms. Yahn, Ms. Haggard, and Ms. Courington sufficient to place said Defendant on notice of Ms. Yahn, Ms. Haggard, and Ms. Courington's propensity to engage in similar conduct generally, and specifically the conduct described hereinabove.

142.   All of the aforementioned acts and others known to Defendant Odom placed Defendant Odom on notice of the need for additional funding to adequately discipline, sanction, train, and supervise the day-to-day activities of the WCCCO, generally, and to specifically discipline, sanction, train, and supervise personnel regarding the proper detaining and confining of citizens who have been brought to jail after a "warrantless arrest" and placed in the care, control, or supervision of magistrates of Defendant Odom and the WCCCO.

143.   The Plaintiffs prays for damages against Defendant Odom for Defendant's constitutional failure to adequately supervise, discipline and for the implicit approval of the unlawful detainment and confinement of persons without seeking a warrant and without a constitutional adjudication of guilt generally, which resulted in

Defendant's continued wrongful actions under color of State law which proximately caused Plaintiffs to be injured and damaged.

144. The Plaintiffs prays for damages against Defendant Odom for Defendant's failure to provide adequate funding to adequately discipline, sanction, train, and supervise the day to day activities of the WCCCO which proximately caused the constitutional failures set forth more specifically hereinabove, which resulted in the continued wrongful actions under color of State law which proximately caused Mr. Rhodes to be injured and damaged.

145. The Plaintiffs claims damages against Defendant Odom for said constitutional violations as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

## **COUNT THREE**

DECLARATORY RELIEF
PURSUANT TO 28 U.S.C. §§ 2201 and 2202

146. Plaintiffs realleges and incorporates by this reference each and every allegation of each paragraph hereinabove as though set forth in full herein.

147. That the acts, omissions and/or conduct of Defendants Odom and

Walker County Circuit Clerk Office personnel, including Ms. Yahn, Ms. Haggard, and Ms. Courington, as described more particularly hereinabove, are the direct and proximate result of the Defendant's failure to compose, implement, enforce policies and procedures, and/or provide adequate funding to effectuate the foregoing, to ensure the Walker County Circuit Clerk Office personnel are not violating the federally protected and Constitutional rights of citizens.

148. The Plaintiffs seeks declaratory relief and a preliminary and a permanent injunction ordering these defendants to compose, implement, and/or enforce proper existing policies or alternatively restraining them from continuing to engage in a pattern and practice of deliberate indifference and/or implicit approval of detaining and confining citizens without seeking a warrant and without a constitutional adjudication of guilt generally which is a violation of federally protected and Constitutional rights of citizens.

149. The Plaintiffs prays for declaratory relief as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

## V.    <u>GENERAL PRAYER FOR RELIEF:</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs prays for the following relief:

a. Compensatory damages as allowed by Federal and State law;

b. Statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988;

c. Punitive damages as allowed by Federal and State law;

d. Reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate;

e. That the Court determine and declare the actions of Defendants Odom and Ms. Yahn, Ms. Haggard, and Ms. Courington to be improper, illegal and/or unconstitutional and as such void and without legal effect; and

f. That the Court grant the Plaintiffs such other further relief as deemed fair and equitable.


## VI.    <u>JURY DEMAND:</u>

**PLAINTIFFS DEMANDS TRIAL BY JURY.**

   **//s// Thomas L. Carmichael**
Attorney for Plaintiffs

Respectfully submitted,


 //s// **Thomas L. Carmichael**
**THOMAS L. CARMICHAEL (CAR133)**
**ASB-1587-A34T**
**Attorney for Plaintiff**
**CARMICHAEL LAW FIRM, LLC**
**301 N. Walston Bridge Rd., Suite 100**
**Jasper, Alabama 35504**
**(205) 302-0099**
**tlc4injury@yahoo.com**


**Documents referenced mandated by the United States Court Of Appeals for the Eleventh Circuit will be filed contemporaneously herewith along with other supporting documents.**