UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TIMOTHY JARROD COLBURN, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 6:15-cv-1789-GMB ) |
| SUSAN ODOM, | ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Pending before the court is Defendant Susan Odom's Motion to Dismiss. Doc. 66. Plaintiffs Timothy Jarrod Colburn, Gary Lynn Blackwell, Howard Derrick Butler, Daniel Rudolph Cassels, Landa L. Clark, Joseph Anthony Elliott, Todd Michael Harrison, and David Edward Rhodes have filed a response in opposition to the motion. Doc. 72. Odom has filed a reply brief in support of her motion. Doc. 74. After careful consideration of the parties' submissions and the applicable law, and for the reasons that follow, the court concludes that the motion to dismiss is due to be granted.

### **I. JURISDICTION AND VENUE**

The court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction, nor do they contest that

venue is proper in the Northern District of Alabama. The court finds adequate allegations to support the propriety of both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

The plaintiffs are seven individuals who allege that they were arrested without a warrant in Walker County, Alabama, and then detained in the county jail. They claim that these actions denied them a proper determination of whether probable cause supported their arrests in violation of Alabama law and the Fourth Amendment. Doc. 60. The plaintiffs filed a complaint in this court on October 13, 2015 against Susan Odom, the Circuit Clerk of Walker County, along with Lela Yahn, Carol Haggard, and Debra Courington, all of whom were employed by the Walker County Circuit Clerk's Office as magistrates. Five of the plaintiffs—Colburn, Rhodes, Elliott, Cassels, and Harrison—previously brought suit against the Sheriff of Walker County and deputy sheriff John Blair Huddleston based on the same underlying facts. *See Colburn v. Huddleston*, 2015 WL 1494554 (N.D. Ala. Mar. 30, 2015). That case has been dismissed. *Id.* at *10.

The plaintiffs specifically allege that they were arrested by Huddleston in a series of warrantless arrests in Walker County between October 2013 and June 2014. Doc. 60 at 8–10. In each case, Huddleston transported one of the plaintiffs to the Walker County Jail in Jasper, Alabama, without first obtaining a determination of

2

probable cause from a judge or magistrate. Doc. 60 at 8–10.  The plaintiffs claim that Odom had the "administrative responsibility for and supervision of the records and clerical services" at the Walker County Circuit Court and that she served as the immediate supervisor for Yahn, Haggard, and Courington. Doc. 60 at 11–12.  In addition to her administrative duties, Odom was "responsible for insuring that the magistrates she assigned were properly trained and that [they] conducted themselves in accordance with the United States Constitution, the Alabama Constitution of 1901 and the Alabama Rules of Criminal Procedure." Doc. 60 at 12 (citing Ala. R. Crim. P. 2.4, 3.1, 4.3, 4.4 & 7.2).

**B.     Procedural History**

In the instant suit, the plaintiffs seek damages under 42 U.S.C. § 1983 against Circuit Clerk Susan Odom and magistrates Yahn, Haggard, and Courington.  On February 27, 2017, the court dismissed the plaintiffs' claims against the three magistrates under the doctrine of judicial immunity. Doc. 36 at 10.  The court also dismissed certain claims against Odom in her official capacity. Doc. 36 at 16–17.  The court denied Odom's motion to dismiss, however, with respect to the remaining claims against her, finding that she was not entitled to judicial immunity or qualified immunity. Doc. 36 at 9 & 16.  The court also concluded that the plaintiffs could "seek relief against Odom in her official capacity . . . in the form of prospective injunctive relief." Doc. 36 at 17.

3

Odom appealed the denial of immunity, but the Eleventh Circuit Court of Appeals held that it could not meaningfully review the appeal because it was unable to "identify from the allegations of the complaint, answer, or motion to dismiss, which of the magistrates purportedly denied the Plaintiffs' Fourth Amendment rights." *Colburn v. Odom*, 911 F.3d 1110, 1113 (11th Cir. 2018). Accordingly, the Eleventh Circuit vacated this court's judgment and remanded for further proceedings pursuant to a series of specific instructions.[1]

In its decision, the Eleventh Circuit noted that the original complaint in this case failed to identify the crimes for which the plaintiffs were arrested and "refused to indicate whether [the plaintiffs] had been taken before a magistrate for an initial appearance." *Id.* at 1120. Instead, the plaintiffs merely alleged that, as to each of them, "one of the magistrates (unidentified) at some point in time (undisclosed) failed to determine that the client's arrest was supported by probable cause." *Id.* In the face of these pleading deficiencies, the Eleventh Circuit held that this court should have dismissed the complaint *sua sponte* "because it failed to state a cognizable claim for relief." *Id.* Remanding for further proceedings, the Eleventh Circuit directed this court to dismiss the plaintiffs' claims against Odom with

---

[1] The plaintiffs did not cross-appeal the dismissal of their claims against the magistrates, and the court finds no basis for reconsidering the dismissal of these claims following the Eleventh Circuit's reversal of the district court denial of immunity to Odum. *See id.* at 1120 n.31 (noting that the plaintiffs did not cross-appeal).

4

prejudice if they chose not to amend their complaint. *Id.* If they did choose to amend, the court held that the amended complaint must include the following allegations with respect to each plaintiff:

- The date of the Plaintiff's arrest, the crimes for which the arrest was made, and the identity of the arresting officer (presumably Deputy Huddleston).

- The date and time the Plaintiff was booked into the Walker County Jail.

- The date and time of the Plaintiff's initial appearance, if the plaintiff received one.

- If an initial appearance was held, the identity of the magistrate who presided.

- The magistrate's failure to determine probable cause for the Plaintiff's arrest for the crimes indicated above.

- The magistrate's bail decision and that it was made without a probable cause determination having been made.

- The date and time of the Plaintiff's release from custody.

- The legal basis for the Plaintiff's release from custody.

*Id.* (footnote omitted).

Additionally, and crucially for the purpose of the motion currently before the court, the Eleventh Circuit mandated that "the amended complaint shall cite the Alabama law which charges the Clerks of the Circuit Courts with the responsibility of reviewing a magistrate's initial appearance decisions and, in particular, the magistrate's probable cause determinations." *Id.* at 1120–21. On remand, the

5

Eleventh Circuit further directed the district court to "determine whether the plaintiffs' amended complaint fails to state a cognizable claim as required by *Iqbal* and *Twombly* and, if so," to consider whether the case should be dismissed without leave to amend the complaint. *Id.* at 1121. Concluding that the amended complaint does not comply with the Eleventh Circuit's instructions and thus fails to state a plausible claim, the court grants Odom's motion to dismiss and dismisses the plaintiffs' claims with prejudice.

### III. STANDARD OF REVIEW

In consideration of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level,"

*id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

While Odom presents a number of arguments in her motion to dismiss, the resolution of the motion boils down to one central issue: whether the amended complaint "cite[s] the Alabama law which charges the Clerks of the Circuit Courts with the responsibility of reviewing a magistrate's initial appearance decisions and, in particular, the magistrate's probable cause determinations." *Colburn*, 911 F.3d at 1120–21. The amended complaint does not do so.[2]

Under the Fourth Amendment to the United States Constitution, when a person is arrested without a warrant, he or she "must promptly be brought before a neutral magistrate for a judicial determination of probable cause, generally within forty-eight hours." *Id.* at 1111 (internal quotation marks omitted). Each state has "discretion in how to integrate these prompt probable cause determinations into their differing systems of pretrial procedures." *Id.* (internal quotation marks omitted). In Alabama, after a person is arrested without a warrant, he or she "must receive an initial appearance at which a judge or magistrate (collectively, 'magistrate') determines probable cause and sets bail." *Id.*; *see also* Ala. R. Crim. P. 4.3(a)(1)(iii)

---

[2] Because the amended complaint fails to address this core concern, the court does not reach the question of whether the plaintiffs heeded the Eleventh Circuit's other instructions. *See Colburn*, 911 F.3d at 1120.

7

(providing that a judge or magistrate must make a probable cause determination following a warrantless arrest and the arrestee "shall proceed . . . for initial appearance"); Ala. R. Crim. P. 4.4(a) (providing procedure for initial appearances); Ala. R. Crim. P. 7.2(a) (providing procedure for pretrial release on personal recognizance or bond).

The plaintiffs' sole remaining claims invoke 42 U.S.C. § 1983 in alleging both an unlawful detention and confinement and a failure to train and supervise. They also request a permanent injunction ordering Odom to "compose, implement, and/or enforce proper existing policies or alternatively restrain[] [her] from continuing to engage in a pattern or practice of deliberate indifference and/or implicit approval of detaining and confining citizens" without a warrant and a proper probable cause determination. Doc. 60 at 38–45; *see also* Doc. 36 at 16–17. Odom argues, among other things, that she is entitled to qualified immunity with respect to the § 1983 claims and that the plaintiffs have not sufficiently alleged their entitlement to injunctive relief. Doc. 72 at 13–15. Because the plaintiffs have not plausibly alleged that Odom violated their Fourth Amendment rights either directly or on a supervisory basis in the absence of any statutory authority establishing her responsibility for reviewing the magistrates' probable cause determinations, the court concludes that the amended complaint does not state a cognizable claim for relief. The court also finds that further amendment would be futile.

## A. Section 1983 Claims

The plaintiffs have two potential paths to relief against Odom under § 1983. They must either set forth sufficient factual allegations (1) that Odom has personally participated in the alleged Fourth Amendment violations or (2) that she is liable on a supervisory basis. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Keith v. DeKalb County, Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014) ("[T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."). The plaintiffs also assert a claim under § 1983 for failure to train, which "implicates a different, albeit very similar, rule" for supervisory liability: "a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [magistrates] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). In light of this kinship, the court will address the plaintiffs' supervisory liability and failure-to-train claims together.

### 1. *Direct Participation*

As implied by the Eleventh Circuit's opinion, the plaintiffs have failed to allege that Odom violated the Constitution through her own actions. Both in the

9

complaint and amended complaint the plaintiffs allege that probable cause determinations are a duty of the magistrates. *See* Doc. 60 at 12 (alleging that "the duties of a magistrate include . . . determining whether probable cause existed in accordance with Rules 2.4 and 4.3"). The plaintiffs also claim that Odom "from time to time assigned Yahn, Haggard, and Courington the duties of magistrate," and "selected Yahn, Haggard, and Courington and assigned them to perform the duties of magistrate and during the performance of that duty one of them travelled to the Jail almost daily." Doc. 60 at 13. They further claim that Odom, in addition to the three magistrates, had knowledge that the plaintiffs' arrests were warrantless and, where she did not know, she had a "duty to make that determination within forty-eight (48) hours thereafter." Doc. 60 at 14–17. With no citation to any state law or rule of criminal procedure, the amended complaint alleges that Odom and the three magistrates "had an obligation imposed upon them by state law . . . to release each of the Plaintiffs upon the execution of an appearance bond in the amount of the minimum bond set in Rule 7.2," and that their failure to do so was a Fourth Amendment violation. Doc. 60 at 17–18.

None of these allegations suggest that Odom personally violated the plaintiffs' Fourth Amendment rights. The same goes for the reference to Odom's "administrative responsibility for and supervision of the records and clerical services" of the Walker County courts. Doc. 60 at 11. Thus, the plaintiffs' claims

can be salvaged only if they allege facts sufficient to support a claim that Odom was liable on a supervisory basis or for a failure to train.

### 2. *Supervisory Liability or Failure to Train*

Problematically for the plaintiffs, their allegations that Odom (in addition to the three magistrates) had a duty both to make probable cause determinations and release the plaintiffs upon the execution of an appearance bond are implausible in light of the Alabama statutory provisions and rules of criminal procedure cited—and those not cited—in the amended complaint. In both the complaint and amended complaint, the plaintiffs implausibly claim, without citation to any rule or law providing support, that Odom's position as the magistrates' "immediate supervisor" makes her "responsible for their respective training and supervision of their performance." Doc. 60 at 11–12.

Perhaps in an attempt to account for this shortcoming, the plaintiffs claim that Odom "had actual and/or constructive notice of" the magistrates' failure to provide timely probable cause determinations, and that Odom was on notice of prior constitutional violations because of the three magistrates' "obvious, flagrant, and rampant behavior . . . across a lengthy period of time[.]" Doc. 60 at 42–43. The plaintiffs often conflate the legal standards for § 1983 supervisory liability and a failure to train, but their claims are flawed regardless of how they are classified because they are supported by allegations that are scant and conclusory—the type of

"legal conclusion couched as a factual allegation" insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. In the amended complaint, the plaintiffs fail to explain how Odom was on notice of prior constitutional violations or the three magistrates' alleged propensity to engage in unconstitutional conduct. The plaintiffs also neglect to offer any factual support for the legal conclusion that Odom has, "as a matter of custom and practice, [and] with deliberate indifference, failed to adequately discipline, sanction, train, and supervise the day-to-day activities of the [magistrates]." Doc. 60 at 41.

Moreover, the alleged "complaints" made to Odom by family members of warrantless arrestees, *see* Doc. 60 at 33, cannot give rise to liability where the plaintiffs have not alleged what Odom could or should have done under Alabama law to address the complaints. Put simply, the plaintiffs have failed to allege any facts showing a direct connection between Odom and the probable cause determinations or a causal connection that could subject her to liability on a supervisory basis. Without Odom's direct participation in a constitutional violation or a sufficient causal connection between her actions as a supervisory official and the alleged constitutional wrongdoing, the plaintiffs have not stated a viable claim under § 1983.

The plaintiffs argue that they have complied with the Eleventh Circuit's direction by alleging in the amended complaint that "Odom has 'administrative responsibility for and supervision of' the records and clerical services of the circuit and district courts and that she is responsible for the training and supervision of the magistrates she assigned, accompanied by citations to the pertinent parts of the Code of Alabama, 1975." Doc. 72 at 4 (citing Doc. 60 at 11–12). But none of the Alabama laws or rules of criminal procedure on which the plaintiffs rely specifically provides that circuit court clerks are responsible for reviewing a magistrate's probable cause determinations or for training and supervising magistrates in any other way.

The plaintiffs identify five statutory provisions. The first, Alabama Code § 12-17-93, grants circuit court clerks the authority to "administer oaths and take acknowledgements and affidavits"; to appoint deputy clerks; to receive judgments; and to "exercise such other powers as are, or may be, conferred by law, including administrative rules of procedure promulgated by order of the Supreme Court of Alabama." The second provision, Alabama Code § 12-17-94, establishes the duties of circuit court clerks. These include the issuance of summons, subpoenas, writs, and executions; the maintenance of docket sheets; the maintenance of court records; the provision of records to the public; the monitoring of compliance with court orders; and the exercise of "such duties as are, or may be, conferred upon [the clerks] by law, including administrative rules promulgated by order of the Supreme Court

13

of Alabama." Third, Alabama Code § 12-17-160 establishes that circuit court clerks are "ex officio clerks" of the district courts within their circuits and "shall have administrative responsibility for and supervision of the records and clerical services of the district court in accordance with applicable general laws and rules." Fourth, Alabama Code § 12-17-161 provides, among other things, that a separate clerk's office for a district court may be established, that a district court clerk is appointed by the Administrative Director of Courts, and that a district court clerk's office may be abolished by the Alabama Supreme Court.[3] Finally, Alabama Code § 12-17-162 merely provides that clerical employees serving a district court "shall be a component of the office of the clerk for the circuit court for the county in which they serve."

As Odom noted in briefing, none of these provisions establishes, even indirectly, the circuit clerk's "responsibility of reviewing a magistrate's initial appearance decisions and, in particular, the magistrate's probable cause determinations." *Colburn*, 911 F.3d at 1120–21. Indeed, the Eleventh Circuit has already found the plaintiffs' allegations to be deficient since the relevant language is unchanged from the original complaint. *Compare* Doc. 1 at 8–9, *with* Doc. 60 at 11–12. Because the magistrates' alleged failure to determine whether the plaintiffs'

---

[3] This section also includes a provision regarding a district court's participation in the state retirement system.

arrests were supported by probable cause is the "*sine qua non* of Plaintiffs' claims," *Colburn*, 911 F.3d at 1120, the lack of any statutory provision providing that the circuit clerk shares the responsibility for determining probable cause is fatal to the plaintiffs' claims against Odom.[4]

**B.     Injunctive Relief**

The plaintiffs' request for "declaratory relief and a preliminary and a permanent injunction" requiring Odom to "compose, implement, and/or enforce proper existing policies or alternatively restraining [her] from continuing to engage in a pattern and practice of deliberate indifference and/or implicit approval of detaining and confining citizens without seeking a warrant and without a constitutional adjudication of guilt" also fails to state a claim upon which relief can be granted. Doc. 60 at 45.  Because the plaintiffs have not properly alleged in the amended complaint the basis for Odom's authority over the magistrates' probable cause determinations, their request for declaratory relief cannot be granted.  Indeed, far from establishing this affirmative duty, the plaintiffs have not even alleged how

---

[4] Because the plaintiffs have not claimed that Odom was acting outside the scope of her discretionary authority and have not sufficiently alleged a constitutional violation against Odom, she also is entitled to qualified immunity. *See, e.g.*, *Chandler v. Sec. of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) ("To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law.").

Odom could establish such a policy or otherwise effect the relief they seek.[5]

## C. Leave to Amend

The Eleventh Circuit also instructed this court to "consider whether dismissal of the complaint without leave to amend is warranted." *Colburn*, 911 F.3d at 1121. The court concludes that it is warranted. The plaintiffs, of course, have already been granted leave to amend the complaint with specific instructions to cure the deficiencies the Eleventh Circuit identified. They were unable to do so despite the Eleventh Circuit's clear mandate, and the court concludes that this inability signifies the futility of any future attempt to amend. Accordingly, the court will not *sua sponte* grant the plaintiffs leave to file a second amended complaint, and instead dismisses their claims with prejudice. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing a "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" as justifications for denying leave to amend).

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant Susan Odom's Motion to Dismiss (Doc. 66) is GRANTED, and all claims asserted by the plaintiffs against her are DISMISSED with prejudice.

---

[5] Even if the plaintiffs had made such a showing, they have fallen well short of the requirements for a preliminary or permanent injunction, particularly with respect to the success-on-the-merits and irreparable-injury elements. *See, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (holding that to demonstrate their entitlement to injunctive relief the plaintiffs must sufficiently allege, among other things, "a substantial likelihood of success on the merits" and that "irreparable injury will be suffered unless the injunction issues").

A final judgment will be entered separately.

DONE and ORDERED on September 23, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE